UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

KIMBERLY YOUNG, *et al.*,

    Plaintiffs,

    v.

REGENCE BLUESHIELD, *et al.*,

    Defendants.

Case No. C07-2008RSL

ORDER REGARDING CROSS MOTIONS FOR PARTIAL SUMMARY JUDGMENT

## I. INTRODUCTION

This matter comes before the Court on cross motions for partial summary judgment filed by plaintiffs and by defendant Regence BlueShield ("Regence"). Plaintiffs, who seek to represent a class, allege that Regence either misrepresented or promised that they would be entitled to take advantage of the rates negotiated between Regence and its preferred providers for health care costs, but they were charged higher rates. Plaintiffs allege claims on behalf of individual and group plan participants. Regence argues that plaintiffs' claim under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001 *et seq.* must be dismissed because plaintiffs

ORDER REGARDING CROSS MOTIONS
FOR PARTIAL SUMMARY JUDGMENT - 1

failed to exhaust their administrative remedies. Regence further argues that plaintiffs' state law claims must be dismissed because plaintiffs lack standing to pursue them.

For the reasons set forth below, the Court grants plaintiffs' motion regarding exhaustion of administrative remedies, denies Regence's motion regarding that issue, and grants in part and denies in part Regence's motion regarding plaintiffs' state law claims.

## II. DISCUSSION

In 2001, Ms. Young and her dependants had dental insurance under a Regence group dental plan (the "group plan"). In November 2001, a dentist sealed two teeth for one of Ms. Young's daughters. Regence denied coverage for the sealants because plaintiffs had exceeded their annual maximum contract benefit amount for preventative care, which the Youngs do not dispute. However, once an insured exceeds that limit, Regence permits its providers to charge the insured their regular rate, rather than the lower, negotiated rate that Regence receives. In this case, the dentist charged plaintiffs $38 per tooth, and plaintiffs argue that they were entitled to pay $34 per tooth at Regence's negotiated rate.

In 2006, Ms. Young had coverage through an individual Regence plan, called a Breakthru Plan. She was billed by Dr. Mark Greenfield, a pediatrician, for his usual rates, rather than the lower negotiated rate, because she had exceeded the contract's maximum benefit amount. Ms. Young appealed. The Breakthru Plan included a three-step review process. At the third stage, which involved a review by an Independent Review Organization ("IRO"), plaintiffs prevailed. The IRO decision recommended that "the denial to process outstanding charges to the allowed amount once the enrollee's preventative benefit was maxed issued by Regence BlueShield be overturned." Declaration of Kimberly Young (Dkt. #39) ("Young Decl."), Ex. A. After receiving the

1 decision, Regence issued a check to Dr. Greenfield for the difference between the lower
2 negotiated rate and the higher rate he charged plaintiffs, thereby obviating plaintiffs'
3 alleged debt to the physician.

4     Dr. Greenfield's charges in 2007 also exceeded the annual benefit limit. Ms.
5 Young again appealed to Regence for the charges exceeding the allowed amounts. In
6 deference to this litigation and the previous IRO ruling, Regence paid Dr. Greenfield for
7 the difference between the billed charges and the negotiated rates.

**A.    Summary Judgment Standard.**

    Summary judgment is appropriate when, viewing the facts in the light most favorable to the nonmoving party, the records show that "there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Once the moving party has satisfied its burden, it is entitled to summary judgment if the non-moving party fails to designate, by affidavits, depositions, answers to interrogatories, or admissions on file, "specific facts showing that there is a genuine issue for trial." Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986).

    All reasonable inferences supported by the evidence are to be drawn in favor of the nonmoving party. See Villiarimo v. Aloha Island Air, Inc., 281 F.3d 1054, 1061 (9th Cir. 2002). "[I]f a rational trier of fact might resolve the issues in favor of the nonmoving party, summary judgment must be denied." T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 631 (9th Cir. 1987). "The mere existence of a scintilla of evidence in support of the non-moving party's position is not sufficient." Triton Energy Corp. v. Square D Co., 68 F.3d 1216, 1221 (9th Cir. 1995). "[S]ummary judgment should be granted where the nonmoving party fails to offer evidence from which a reasonable jury could return a verdict in its favor." Id. at 1221.

## B. ERISA Claims Under the Group Dental Plan.

Regence argues that plaintiffs' ERISA claim, which is based on the services obtained in 2001, must be dismissed for failure to exhaust administrative remedies. Plaintiffs do not dispute that they were required to exhaust administrative remedies prior to filing a lawsuit. Plaintiffs argue that their claim can proceed because it would have been futile to attempt to exhaust their remedies. An exception to the exhaustion requirement exists when exhaustion would be futile or where it would afford an inadequate remedy. See, e.g., Amato v. Bernard, 618 F.2d 559, 568 (9th Cir. 1980); see also Diaz v. United Agric. Employee Welfare Benefit Plan & Trust, 50 F.3d 1478, 1485 (9th Cir. 1995) (explaining that the exception "is designed to avoid the need to pursue an administrative review that is demonstrably doomed to fail"). "A district court has discretion to waive the exhaustion requirement, . . . , and should do so when exhaustion would be futile." Horan v. Kaiser Steel Ret. Plan, 947 F.2d 1412, 1416 (9th Cir. 1991) (internal citations omitted).

In this case, plaintiffs argue that exhaustion would have been futile because Regence has consistently interpreted the policy language, both in the individual and the group plans, to state that providers may charge their regular rate once the subscriber's maximum contract benefit has been exhausted. Regence argues that the two plans contain different policy language. However, its *interpretation* of the provisions has been the same. Regence informed Ms. Young of its position in 2001. Young Decl. at ¶ 3; see also Cadwell Dep. at p. 203 (explaining that "as far as [she] could remember, it has always been this way"); Answer at ¶ 2.15. The 2001, 2006, and 2007 charges were all denied pursuant to the same internal code – "M01 Maximum Benefit Expended." Regence's customer service representatives have repeatedly informed Ms. Young of

ORDER REGARDING CROSS MOTIONS
FOR PARTIAL SUMMARY JUDGMENT - 4

Regence's interpretation of the policy language under both plans. Accordingly, the difference in the policy language is largely irrelevant.

Regence presents statistics showing that insureds who appeal are frequently granted relief. However, as plaintiffs note, Regence has not shown that it has ever granted an appeal for an insured who contested the higher rates. Regence also contends that it paid the higher rates for plaintiffs based on the 2006 and 2007 bills. However, Regence *denied* Ms. Young's first and second level appeal of the 2006 charges. It agreed to pay the higher rates only after the IRO ruled in plaintiff's favor. Regence paid the 2007 charges only because plaintiff had commenced litigation. In addition, the group plan did not include IRO review. Instead, it included only one level of review, an internal review by Regence, who has made its position on this issue unequivocally clear. There is no evidence that Ms. Young would have obtained a different result if she had appealed the 2001 charges.

Regence also argues that plaintiffs should not be able to excuse their failure to exhaust in 2001 based on events in 2006 and 2007. However, the Court is not waiving the exhaustion requirement based on later events. Rather, it is excusing plaintiffs' failure to exhaust based on the fact that Regence's position, now and in 2001, is known and would have resulted in the denial of an appeal. See, e.g., Horan, 947 F.2d at 1416 (waiving the exhaustion requirement as "unnecessary" where the court was "fully apprised of the administrator's expertise and its decision as to the merits of the plaintiffs' claim").[1] Finally, the purposes of the exhaustion requirement would not be served by

---

[1] Regence cites two cases from outside this district for the proposition that a futility determination is based only on the information available to the claimant at the time of the appeal. Although Mattox v. Life Ins. Co. of N. Am., 536 F. Supp. 2d 1307, 1321 (N.D. Ga. 2008) stands for that proposition, the Court applies Ninth Circuit law,

ORDER REGARDING CROSS MOTIONS
FOR PARTIAL SUMMARY JUDGMENT - 5

1 requiring exhaustion in this case. See, e.g., Amato, 618 F.2d at 567 (explaining that the
2 judicially created doctrine exists to reduce the number of frivolous lawsuits, to promote
3 the consistent treatment of benefit claims, to provide a nonadversarial method of claims
4 resolution, and to minimize the cost of claims settlement).

Accordingly, the Court waives plaintiffs' failure to exhaust administrative remedies. Plaintiffs may proceed with their claim based on the group plan.

## C. Standing Under the Individual Plan.

Plaintiffs also seek damages and injunctive relief based on an individual health benefit plan that is governed by state law. Regence argues that plaintiffs' claim for damages under the individual plan must be dismissed for lack of standing. Regence further contends that plaintiffs' claim for injunctive relief must be dismissed as speculative.

### 1. Damages.

Regence argues that plaintiffs lack standing to pursue claims under the individual plan because Regence paid the disputed amount before plaintiffs filed this case. Plaintiffs counter that Regence did not reimburse Dr. Greenfield until April 2008, months after they filed this lawsuit in November 2007. Based on that fact, they argue that they had standing at the time they filed this action. Standing requires "(1) an injury in fact, (2) causation, and (3) likelihood that the injury will be redressed by a favorable decision." Am. Civil Liberties Union of Nevada v. Lomax, 471 F.3d 1010, 1015 (9th Cir. 2006 (citing Lujan v. Defenders of Wildlife, 504 U.S. 555, 571 n.4 (1992)).

Plaintiffs cannot show that they suffered an injury before they filed suit. Regence's business records show that it issued a check and mailed it to Dr. Greenfield on

---

including the Horan decision cited above.

June 29, 2007. Declaration of Vijaya Rao (Dkt. #34) ("Rao Decl.") at ¶ 9, Ex. 6 at p. 3843 (file notation on June 29, 2007 indicating "Check rec'd & sent to prov.").[2] The replacement check was never cashed, so Regence issued another check in April 2008. These facts show that Regence remitted payment to Dr. Greenfield months before plaintiffs filed this lawsuit. Although Dr. Greenfield did not cash the check in 2007, Regence should not be liable for the actions of third parties beyond its control. Plaintiffs argue that there is no evidence that the doctor actually received the check in 2007, but Regence is not required to prove that the check was actually received. Instead, Regence is entitled to a presumption that it was received based on the mailbox rule. See, e.g., Payan v. Aramark Mgmt. Services Ltd. P'ship, 495 F.3d 1119, 1123 n.4 (9th Cir. 2007) (explaining that the mailbox rule is "a long-established principle which presumes that, upon a showing of predicate facts that a communication was sent, the communication reached its destination in regular time"). Moreover, plaintiffs have presented no evidence to show that the check was not sent or received. Accordingly, the fact that the check was sent and the presumption created by the mailbox rule are sufficient to show that Regence remitted payment before plaintiffs filed suit, which deprives plaintiffs of standing.

Plaintiffs also argue that Regence was required to reimburse the Youngs directly and to issue another explanation of benefits. However, neither ERISA nor the IRO decision required Regence to do so. In addition, at the time it made the payment, Regence did not know that the Youngs had paid Dr. Greenfield for the higher amounts. Under these circumstances, it was not unreasonable for Regence to forward payment

---

[2] Plaintiffs moved to strike the exhibits attached to Ms. Rao's declaration because she did not prepare the exhibits herself. However, the record shows that the documents were kept in the ordinary course of business, and are therefore admissible under Federal Rule of Evidence 803(6).

1 directly to Dr. Greenfield.  Now that both the Youngs and Regence have remitted the
2 same amounts to Dr. Greenfield, the Youngs may seek reimbursement from him.

3    Finally, plaintiffs argue that they have incurred damages in excess of the amount
4 remitted to Dr. Greenfield, including attorney's fees and other amounts they are entitled
5 to if their claim is successful under the Washington Consumer Protection Act.  However,
6 they are not entitled to recover their litigation-related fees and expenses if they lacked
7 standing at the time they filed suit.  Similarly, they are not entitled to interest because
8 Regence complied with its obligations under the IRO and remitted payment.
9 Accordingly, plaintiffs lack standing to pursue a claim for damages under the individual
10 plan.  Because plaintiffs lack standing to pursue an individual claim for damages, they
11 also lack standing to pursue relief on behalf of a class.  <u>See, e.g.</u>, <u>Lierboe v. State Farm</u>
12 <u>Mutual Auto. Ins. Co.</u>, 350 F.3d 1018, 1022 (9th Cir. 2003).  Plaintiffs' individual and
13 class claims for damages are dismissed for lack of standing.

14   **2.**  **Injunctive Relief.**

15    To establish standing for their claim for injunctive relief, plaintiffs must show that
16 they are "imminently in danger of sustaining a direct injury as the result of the challenged
17 conduct."  <u>Casey v. Lewis</u>, 4 F.3d 1516, 1519 (9th Cir. 1993).  The threatened injury
18 must be real and immediate rather than conjectural and hypothetical.  <u>Id.</u>  Regence argues
19 that plaintiffs have not shown a real and immediate threat of future harm because future
20 harm would depend on (1) the Youngs' renewal of a health benefit plan with Regence
21 containing the same policy language, (2) the Youngs' use of health care services
22 exceeding a maximum contract benefit in a given year, and (3) Regence refusing to
23 indemnify the Youngs for charges in excess of the applicable allowed amounts, despite
24 having done so in 2006 and 2007.  Regence's Motion for Summary Judgment Regarding
25

State Law Claims at p. 10. However, the Youngs continue to subscribe to an individual Regence plan, and they have no intention of dropping the plan. Young Decl. at ¶ 10. It appears reasonably likely that the Youngs will exceed the maximum benefit limit again, just as they have in the past two consecutive years. If Regence's argument were accepted, it is difficult to imagine how any subscriber would be able to show standing to obtain an injunction because an insured is always free to cancel his or her plan, or to attempt to limit his or her consumption of health care services.

Moreover, although Regence chose to indemnify the Youngs for the 2006 and 2007 higher charges, their voluntary decision to do so cannot defeat a claim for an injunction. The Youngs cannot assume that Regence will continue to pay the higher charges in spite of their on-going policy. Accordingly, the Youngs have standing to assert a claim for an injunction.

### III. CONCLUSION

For all of the foregoing reasons, the Court DENIES defendant's motion for partial summary judgment regarding plaintiffs' ERISA claim (Dkt. #31), GRANTS plaintiffs' motion for partial summary judgment regarding futility (Dkt. #40), and GRANTS IN PART AND DENIES IN PART defendant's motion for partial summary judgment regarding the state law claims (Dkt. #33). Plaintiffs' state law claims for damages under the individual plan are dismissed. Plaintiffs may pursue their claim for an injunction.

DATED this 2nd day of September, 2008.

*/s/ Robert S. Lasnik*
Robert S. Lasnik
United States District Judge

ORDER REGARDING CROSS MOTIONS
FOR PARTIAL SUMMARY JUDGMENT - 9